# ORLEANS COUNTY.

## March Term, 1837.

Present, Hon. CHARLES K. WILLIAMS, *Chief Justice.*
    "   STEPHEN ROYCE.    } *Assistant Justices.*
    "   ISAAC F. REDFIELD·  }

### PERLY AYER *v.* THOMAS JAMESON.

Orleans,
*March*
1837.

The lien, created by attachment of personal property, is preserved by giving the execution, within thirty days, to the officer attaching. !

When the attachment is made by one officer, and the execution is deliver-·ed to another. with directions to levy on the property attached, it is the duty of the officer, who has the execution, to demand the property of the one making the attachment.

An attachment, made by the sheriff's deputy, is the same as if made by him, and the lien is preserved by delivering the execution to the sheriff.

This was an action on the case against the defendant, as sheriff of Orleans county, for neglect of duty in not keeping property, attached by his deputy, John W. Mason, at the suit of the plaintiff against one Rogers, or in not pursuing such a course, as to preserve the lien acquired by the attachment. Plea—general issue, and trial by jury.

The plaintiff gave in evidence the attachment, at nis suit, of Rogers' personal property, by Mason, as deputy of defendant—

· Orleans,
*March*,
1837.

Ayer
*v*
Jameson.

and the record of the proceedings and judgment, in said suit against Rogers. He also proved, that within thirty days after the recovery of said judgment, he prayed out execution against Rogers and caused the same to be delivered to the defendant ; and that defendant returned the same, with a return of *nulla bona* and *non est inventus*, indorsed thereon.

The plaintiff, also, introduced evidence tending to show, that defendant had actual notice, while the suit against Rogers was pending in court, of the attachment made by Mason, and that the person, who receipted the property, had left the country, and taken the property with him—and further tending to show, that when defendant received the execution, he inquired of the clerk of the court, (who delivered the execution to him,) what the plaintiff would have done with it ? and that the clerk replied, he supposed the object was to hold the property attached.

It appeared from the testimony of James A. Paddock, Esq. who was attorney of the plaintiff, as well in this suit, as that against Rogers, that shortly before the return of the execution, ·defendant called on witness at Craftsbury, and inquired, what he should do with the execution ? and that witness replied, he supposed it must be *non-ested*. At the same time, he requested defendant to have the execution sent to him, Paddock, after it should be *non-ested*. The witness said the object of this request was to enable himself to institute a suit for the loss of said property, and that he believed the object was declared to the defendant.

There was no other evidence of any direction to defendant, to pursue the property attached, or to take any other course with the execution. The defendant contended, and requested the court to charge the jury, that, upon this evidence, the plaintiff was not entitled to recover. But the court charged the jury, that the evidence was sufficient, if believed, to fix the defendant with the duty of pursuing such a course with the execution, as would secure to the plaintiff the benefit of the original attachment ; and that whether he was afterwards discharged from that duty, by what passed between him and the attorney, would depend on the construction to be put on that conversation. If it was to be understood as a direction and control of the execution, then assumed by Paddock,—defendant was excused, and ought to have a verdict—but if it did not amount to such a direction, or control, plaintiff was entitled to recover—and as they believed

Orleans,
March,
1837.

Ayer
v.
Jameson.

said conversation should be understood, so their verdict would be made up. Verdict and judgment for plaintiff—and exceptions by defendant to the said charge of the county court.

*A. Young & J. Cooper, Jr. for defendant.*

The principle question doubtless is, whether Jameson, the defendant, has in his official capacity done, or left undone, any thing in the premises, whereby he becomes legally liable to the plaintiff. In order to charge the defendant, he must have neglected some known duty—at least, such as he was legally bound to know,—or to have done some act contrary to his general duties, or to some special instruction, whereby the plaintiff was damnified.

Had the defendant served the original writ, his receiving the execution, as proved, would have been a legal taking of the property by him, agreeably to the construction given to the 33 Sec. of the Judiciary act. Or had the defendant received the execution in proper season, with suitable and explicit instructions to call on Mason, who made the original attachment, and demand of him the property, he would have been liable, had he failed to perform what would then have been his duty.

But time and a knowledge of such facts, as would enable him to obey the plaintiff's instructions, are necessary in order to charge defendant for a non-feasance.

Nor should such knowledge be made to rest upon a casual or incidental conversation, that might have taken place at some distant period of time, when it was not known whether the story related would be of any conseqence, or importance, whether true or false—as must have been the case in the present instance, if the defendant ever had any knowledge whatever on the subject.

But in the absence of any reason shown, why the execution was not delivered to Mason instead of Jameson—it appears that any information, which Jameson received, or possessed, on the subject, must have been extremely vague, indefinite and unintelligible; and not such as he was legally bound to remember or notice, or such as the law would require in order to charge him. Besides, if he was to draw any conclusion from appearances, they certainly served to show, that the execution was then handed to him for the sole purpose of holding bail.

The case states, that evidence was given by plaintiff, tending to show, that during the pendency of the suit against Rogers,

defendant had actual notice of the attachment made by Mason, and that the person, who receipted the property, had taken it out of the country.

But how, or by whom, this actual notice was given, does not appear, or whether the notice was true in point of fact, otherwise than that it appears by the return on the original writ, that the attachment was made by Mason. Nor does it appear that Jameson was informed how much, or what kind of property, was attached,—or that he believed, or took any notice of the report that whoever might have receipted the property had taken it out of the country, or that he heard who the receiptor was, or whether responsible or not—or whether the property might not be in readiness when required; nor would Jameson be likely to trouble himself at all on those points, or even to notice them or remember them, if he supposed his deputies capable of taking care of themselves.

Nor does it appear but that the property attached was, from the rendition of the judgment until thirty days thereafter, in the legal possession of Mason by himself or another, ready to be delivered or taken on the execution, according to all legal presumption.

As to the inquiry made by Jameson, of the clerk, on receiving the execution, if it implies any thing, it implies an ignorance in Jameson of the whole matter till then—and a desire to ascertain the plaintiff's wishes in the matter. But the reply of the clerk gave him no specific directions, or information, in the matter—but merely a supposed object.

J. F. Redfield, for plaintiff.

The opinion of the court was delivered by

WILLIAMS, Ch. J. We think, from the case as presented, that the defendant was rightly held accountable to the plaintiff.

When the goods and chattels of a debtor are attached, and a judgment is rendered against the debtor, the lien is preserved, if the creditor deliver the execution to the officer, who made the attachment, within 30 days from the date of the judgment. The articles attached are considered in the custody of the attaching officer, and it is his duty to levy the execution thereon, unless directed to the contrary. Where the attachment is made by one officer, as by a constable, and the execution is delivered to another, as a sheriff, the plaintiff should direct the officer to levy on the property attached, and it would then become the

Orleans.
March,
1837.

Ayer
v.
Jameson.

duty of the one who had the execution, to demand of the one who made the attachment, the property so attached.

In the case before us, the attachment was made by the defendant's deputy, Mason, and, in contemplation of law, was made by the defendant himself; the property attached was in his custody; and the plaintiff preserved his lien by the delivery of the execution to the defendant within thirty days. The neglect of the defendant to levy on the same, was a neglect of his duty, according to the doctrine of the case of *Bliss* v. *Stevens*, 4 Vt. Rep. 88.

But, moreover, the defendant was apprized that the attachment had been made by Mason, the deputy sheriff. When he received the execution, he was reminded by the clerk of the court, who delivered it to him, that the object of the plaintiff was to hold the property attached. If the attachment had been made by a different officer, the duty of the defendant, under these circumstances, was to levy on the goods attached, or take such course as would secure to the creditor the benefit of the attachment. On either of the grounds the defendant was liable, unless he was discharged from his liability in consequence of the directions of Mr. Paddock, the plaintiff's attorney. And upon this question, it is sufficient to remark, that the subject was left to the jury, under a charge quite as favorable as the defendant could ask. We cannot see that Mr. Paddock exercised any control, or gave the defendant any direction to pursue a course different from the one which his duty dictated.

The judgment of the county court is affirmed.

REDFIELD, J. being of the counsel for the plaintiff did not sit in this case.