## N. B. FLANAGAN v. WILLIAM H. HOYT.

*Sheriffs and their Deputies. Attachment. Receiptor's Liability.*

The acts of a deputy are to be regarded as the acts of the sheriff, not in the sense of either agency or identity, but rather in the sense of official relation and of responsibility cast by law upon the sheriff for the acts of his deputy; not in the sense that what the deputy does is done by the sheriff, but that, for what he does the sheriff is made responsible the same as if he had officially done the same thing.

Where property is attached by a sheriff, and receipted, and then left by the receiptor in the hands of the defendant, and before judgment the same

Flanagan *v.* Hoyt.

property is levied upon and sold by the deputy on an execution against the defendant, without the knowledge and consent of the sheriff, it is *held,* that upon judgment being recovered in the first suit and execution issued, the receiptor will be holden to the sheriff in an action for the property, notwithstanding it was taken and sold by his deputy.

TROVER. The parties in this case mutually agreed to and admitted the following facts :

The plaintiff, sheriff of Chittenden county, on the 9th of May, 1861, regularly attached the horses in question on a writ in favor of Wm. Scott against D. A. Danforth and E. M. Smalley, (the horses being Danforth's property,) returnable to the September Term, 1861, of Chittenden county court. Due return was made of that process, judgment was recovered by Scott at the April Term, 1862, of said court for $80.61. (including damages and costs) and all necessary steps were seasonably taken to charge the property in execution. After the attachment of the horses, and on the same day, they were bailed by the plaintiff to Danforth and the defendant for safe keeping and they thereupon executed and delivered to the plaintiff an officer's receipt, so called, whereby they jointly and severally agreed to safely keep the horses free of charge, and to return them to the plaintiff on demand.

The horses were duly demanded of Danforth and the defendant, by the plaintiff, during the life of the execution—Scott against Danforth and Smalley—but were not returned to the plaintiff then nor at any other time.  ·

After said attachment by the plaintiff and before judgment in the case Scott against Danforth and Smalley, the horses, being in Danforth's possession, were, without the knowledge or consent of the plaintiff, or defendant in fact in this case, levied upon and sold by one Livock, a deputy sheriff of the plaintiff, on an execution against Danforth in favor of another creditor. The horses at the time of the execution of said officer's receipt were of value more than sufficient to pay the judgment in favor of Scott. And it was further agreed that unless the taking and sale of the property by Livock as aforesaid, is a legal excuse for the defendant's neglect to return it to the plaintiff, the plaintiff is to have judgment in this case for said sum of $80.61. with interest thereon, to be computed from April 19th, 1862.

On this agreed statement of facts the court, September Term, 1863, PIERPOINT, J., presiding, rendered judgment for the defendant,—to which the plaintiff excepted.

*E. R. Hard*, for the plaintiff.

The taking of the property by Livock constitutes no defence. The statute which declares that the acts, &c., of deputy sheriffs shall be deemed to be the acts of the sheriff has reference only to the responsibility of the sheriff for the official *misfeasances and neglect* of the deputy, and was not intended to so identify the sheriff with the deputy as that *all* the official acts of the latter should affect the sheriff precisely as if done by himself. Under our present statute as well as under the statute of 1797, deputy sheriffs have always been recognized as *public officers*, distinct from, and independent of the sheriff and not his mere agents or servants. 4 Vt. 616. Save his discretionary power to revoke the deputation, the sheriff has no more power to control, nor right to oppose, the official action of the deputy, than has any other person. The sheriff cannot lawfully resist the service of process upon himself by one of his deputies. *Shaw* v. *Baldwin*, 33 Vt. 447.

*Levi Underwood*, for the defendant.

If the sheriff had taken the property on a second writ it would have discharged the receipt and all liabilities of the parties who signed it. *Beach* v. *Abbott et als.*, 4 Vt. 605 ; *Rood* v. *Scott et als.*, 5 Vt. 263. The inquiry then arises whether the taking of the property by the sheriff's deputy on another writ, without the consent of the receiptor, will have the same effect? We insist that it will. A deputy sheriff is, in law, the agent of the sheriff who is liable for all his official acts, (the deputy not being liable at all) ; he is appointed and derives all his authority through the sheriff ; property attached by him is under the control of the sheriff, who is responsible for its safe keeping and proper application ; he is subject to removal by the sheriff at will ; his acts, under color of his office, are the acts of the sheriff. We insist further that the taking, by the plaintiff's deputy, the property from the defendant without his knowledge or assent, put it out of his power to deliver it to the sheriff on demand. And hence the

Flanagan *v.* Hoyt.

omission to deliver it on demand, is neither a *conversion* nor *evidence* of a *conversion* of the property, which will support an action of trover. *Adams* v. *Abbott,* 2 Vt. 383 ; *Jameson* v. *Ware,* 6 Vt. 610 ; *Adams* v. *Fox,* 17 Vt. 361 ; *Yale* v. *Saunders et al.,* 16 Vt. 243 ; *Seward* v. *Heflin,* 20 Vt. 144 ; *Nutt* v. *Wheeler,* 30 Vt. 436.

BARRETT, J.   Flanagan, as sheriff, attached the horses of Danforth on a writ against him ; whereupon he and the defendant receipted the property in the ordinary manner, jointly and severally agreeing to keep it free of charge, and return it to the plaintiff on demand.   After this, and before judgment in the suit on which the horses had been so attached, Livock, a deputy of the plaintiff, on an execution against Danforth, levied upon and sold the same horses, without the knowledge or consent of either the plaintiff or defendant, said horses being in Danforth's possession.   Judgment was duly obtained in said first suit, execution thereon was duly taken out and delivered to the plaintiff as sheriff, and the property was duly demanded of Danforth and the defendant by him ; but it was not then or ever returned to him.

The property, being found in Danforth's possession was subject to be levied on the execution that Livock held, notwithstanding the prior attachment of it ; and being so levied and sold, the receiptors must be liable to answer upon their receipt for the property, unless the act of Livock is to be regarded as the act of the plaintiff, in such a sense as to render his taking of the property upon said execution as taken by the sheriff.

It is claimed that all official acts by the deputy are to be regarded as done by the sheriff, to the same intent, and to every legal effect, as if done by the sheriff himself,—in other words, that the deputy is but the agent or instrument by which the sheriff acts, and has no independent *status* and functions.   We are mindful of what has been held and said in *Johnson* v. *Edson,* 2 Aik. 299 ; *Davis* v. *Miller,* 1 Vt. 9 ; *Bliss* v. *Stevens,* 4 Vt. 88 ; and *Ayer* v. *Jameson,* 9 Vt. 363 ; and though no practical inconvenience or injury would seem likely to result from the view therein taken and expressed, as to the relation existing between the sheriff and his deputy, if confined to cases of a similar kind,

it still seems to us that it would have been as well, even in those cases, to have adopted a different view, and one that could have been practically acted upon in all cases without incongruity, and without resulting in embarrassment or injury in any.

Without undertaking to overrule the view expressed in those cases, as applied and acted upon in them, we think the truer and more legitimate view is, that while in a certain sense, the acts of the deputy are to be regarded as the acts of the sheriff, yet not in the sense of either agency or identity; but rather in the sense of official relation and of responsibility cast by law upon the sheriff for the acts of his deputy; not in the sense that what the deputy does is done by the sheriff, but that for what he does the sheriff is made responsible the same as if he had officially done the same thing.

The statute and the court have always accorded to deputy sheriffs a distinct official existence, and cast upon them personal duties in their official character,—duties which they personally must perform without reference or regard to the source whence they derive their official existence, or to the relation of responsibility which the sheriff sustains to them.

Having been invested with official existence by the appointment of the sheriff, while that continues deputy sheriffs have personally just as distinct and independent functions in the line of official duty, as the sheriff himself; and the idea of identity with the sheriff, or agency for him, does not legitimately arise in the lawful performance of those duties. It is only in case the deputy commits some breach of official duty that the idea of identity is suggested by the provisions of the statute, and that does not necessarily extend beyond the relation of responsibility which the sheriff is under for such acts.

If a deputy has taken property on a process, it is well understood that the same property may be further charged by delivering to him another writ, without any form or ceremony to be enacted by him in relation to such property; and so on, by the delivery to him of successive writs creating successive liens. But it would hardly be claimed that the mere delivery of a writ to the sheriff by some other creditor of the owner of the property

37

would charge a lien by attachment upon that property, as against a creditor who should subsequently deliver a writ to the deputy who was holding the property under such prior attachments. And still such must be the result of carrying this idea of identity to the extent claimed by the defendant in this case. Many cases might be put which would equally illustrate the practical, as well as the *legal* official individuality and independence of the deputy sheriff.

The case of *Shaw* v. *Baldwin*, 33 Vt. 447, was decided in the county court upon the idea of the identity of the sheriff and his deputy, which is expressed and adopted in the cases above referred to ; and that the taking of the *piano* by Bliss, as a deputy sheriff, on the writ of replevin, was a taking by the sheriff, Baldwin ; and so, it constituted no defence to the sheriff against his liability for not holding it upon the execution which he had previously levied, and upon which he was holding the property for sale. This court ignored that idea, and held the defendant excused.

In the present case, it is conceded that the act of the deputy, in taking and selling the property on the execution that was delivered to him for that purpose, was lawful in every respect ; that he was but discharging a duty to the creditor which the law imposed upon him, and was doing with the property only what it was the lawful right of the creditor, through him, as an officer of the law, to have done. The deputy had no right to decline to receive and execute said execution. G. S., ch. 12, § § 20–21.

The property in Danforth's possession was subject, by the rules of law, to be levied upon by that creditor for the satisfaction of his judgment. And in this respect the defendant has no cause to claim immunity, for he had voluntarily permitted the property, after having obtained its control by receipting for it to the plaintiff, to become subject to such levy, by permitting it to go into Danforth's possession.

The statute above cited impresses a pretty distinct individuality upon the official *status* and character of a deputy sheriff, in providing, in the disjunctive, that " any sheriff *or* deputy sheriff

Flanagan *v.* Hoyt.

who shall wilfully refuse or neglect, &c., shall pay a fine not exceeding one hundred dollars, and shall pay to the party aggrieved   *   *   all damages thereby sustained, with costs."

In our judgment the doctrine of the identity of the sheriff with his deputies, or that they are merely his servants and agents, ought not to be carried to the extent of holding the act of Livock, in levying said execution, to be the act of the plaintiff, to the intent that its effect upon the plaintiff's right to recover upon the receipt is the same as if the plaintiff had, personally, received and levied said execution upon said property. The legitimate result of so holding would be to place sheriffs and their deputies in a position that would compel them, for self preservation, to refuse to part with the possession of property attached by them, upon the offer of good and sufficient receipts, or compel sheriffs to have no deputies.

The present case places the subject in a strong light. The plaintiff was bound to keep and have the property attached by him, to respond the judgment in the suit. He surrendered the possession upon receiving a responsible receipt for it, according to long practised usage, fully warranted and sanctioned by law. The receiptors held and managed the property in their own way, and thereby subjected it to be taken by another creditor. Without any fault of the plaintiff, and without his knowledge, it was so taken and disposed of in a manner provided by the law.

His deputy, Livock, committed no official default in taking and disposing of the property upon the execution placed in his hands. If the plaintiff cannot be permitted to hold his receiptors he must respond for the property without any resource for indemnity ; for his deputy would not be answerable to him, having only done his duty enjoined by the law. Such a result can be justified only upon inexorable requirements of law.

This is but one of a series of cases that are likely to occur of a similar character, situated as sheriffs and deputies are in different and remote localities, and having no knowledge of the processes which each may respectively have for service, or of what may have been done under them.

On the whole, we feel warranted in holding, and in this case,

upon the law as we understand it, feel compelled to hold, that the taking of the property by Livock does not affect the right of the plaintiff and the liability of the defendant in this suit.

Upon the stipulation which constitutes the case, we do not understand that any question can be made, as to the propriety of the form of action. If, in any form upon the facts stated, the plaintiff would be entitled to recover, we understand that he is to have judgment in this action for the sum agreed.

The *pro forma* judgment of the county court is reversed, and judgment rendered for the plaintiff for the sum agreed, with interest from April 19th, 1862.